■ In the Matter of the Claim of PARKE R. BROWN, Respondent. ERIE 2 CHAUTAUQUA-CATTARAUGUS BOARD OF COOPERATIVE EDUCATIONAL SERVICES, Appellant; COMMISSIONER OF LABOR, Respondent. [20 NYS3d 232]—

Devine, J. Appeal from a decision of the Unemployment Insurance Appeal Board, filed February 20, 2014, which ruled that claimant was eligible to receive unemployment insurance benefits.

Claimant is employed as a criminal justice teacher for the employer. He was placed on administrative leave in March 2012 and, shortly thereafter, the employer filed charges pursuant to Education Law § 3020-a with an eye toward his termination. Following an evidentiary hearing at which claimant had a full and fair opportunity to dispute the accusations, the Hearing Officer found him guilty of a number of the charges. The Hearing Officer further found that termination was not called for, however, and instead directed that claimant be suspended without pay for the second half of the 2012-2013 school year.

Claimant applied for and obtained unemployment insurance benefits during the suspension period, prompting an objection by the employer. After further proceedings, an Administrative Law Judge correctly acknowledged that the factual findings made by the Hearing Officer were entitled to collateral estoppel effect (*see Matter of Czosek [Cheektowaga-Sloan Union Free School Dist.—Commissioner of Labor]*, 71 AD3d 1359, 1360 [2010]; *Matter of Tranberg [New York City Bd. of Educ. of City School Dist. of City of N.Y.—Hudacs]*, 205 AD2d 812, 812 [1994]). The Administrative Law Judge nevertheless concluded that the conduct for which claimant was disciplined, while "serious," did not rise to the level of disqualifying misconduct that would preclude him from receiving unemployment insurance benefits. The Unemployment Insurance Appeal Board affirmed, and the employer appeals.

Initially, while the Board never expressly addressed the employer's contention that claimant was barred from receiving benefits because he was not "totally unemployed" during the period of suspension, its decision can only be read as an implicit rejection of that argument (Labor Law § 591 [1]; *see Matter of Smith [Commissioner of Labor]*, 8 AD3d 744, 745 [2004]). "Total unemployment is defined as 'the total lack of any employment on any day' " (*Matter of Smith [Commissioner of Labor]*, 8 AD3d at 745, quoting Labor Law § 522), and claimant was suspended without pay for the period in question and was not subsequently

compensated in any way for the time he was idle. Substantial evidence therefore supports the decision of the Board that claimant was totally unemployed during the period in question (*cf. Matter of De Maria [Catherwood]*, 31 AD2d 708, 708 [1968]; *Matter of Tonra*, 258 App Div 835, 835 [1939], *affd* 283 NY 676 [1940]).

As for the question of whether claimant committed disqualifying misconduct, we note that such "is a factual issue for the Board to resolve, and not every mistake, exercise of poor judgment or discharge for cause will rise to the level of misconduct" (*Matter of Jensen [Victory State Bank—Commissioner of Labor]*, 126 AD3d 1207, 1207-1208 [2015] [internal quotation marks and citations omitted]). That being said, claimant here was found to have committed numerous instances of improper, immoral and insubordinate behavior, as well as conduct unbecoming a teacher. He was specifically found to have made inappropriate, demeaning and sarcastic comments to students, to have sent unprofessional emails to staff and parents, and to have violated the employer's policies and procedures governing the treatment of students, parents and fellow employees. A notable example of his cavalier treatment of students was an incident wherein he improperly confiscated a student's cell phone and impersonated that student in order to learn what another student thought of his teaching abilities. Claimant further disregarded the employer's policy regarding the use of multimedia tools in the classroom, despite having previously discussed that policy with administrators, and elected to show a violent movie to his students without obtaining parental consent to do so.

An employee's actions that are contrary to established policies and that have a detrimental effect upon the employer's interests have been found to constitute disqualifying misconduct (*see Matter of Campon [Commissioner of Labor]*, 122 AD3d 1228, 1228 [2014]; *Matter of Cody [New York City Dept. of Educ.—Commissioner of Labor]*, 37 AD3d 920, 920 [2007]). This includes insubordinate conduct (*see Matter of Benbow [Commissioner of Labor]*, 32 AD3d 1094, 1095 [2006]) and unprofessional behavior that is detrimental to the interests of the employer (*see Matter of Katz [Commissioner of Labor]*, 54 AD3d 1093, 1093 [2008]; *Matter of Moore [Commissioner of Labor]*, 49 AD3d 1124, 1124 [2008]). The Hearing Officer found that claimant repeatedly engaged in that type of behavior and, under the circumstances presented by this case, the decision of the Board that his behavior reflected nothing more than "poor judgment . . . is erroneous and is not supported by substantial

evidence" (*Matter of Restifo [Roberts]*, 88 AD2d 1045, 1046 [1982]; *see Matter of McIntee [National Ambulance & Oxygen Serv.—Ross]*, 64 AD2d 1003, 1003-1004 [1978]).

Inasmuch as the facts of this case leave no question that claimant committed disqualifying misconduct, we need not reach the employer's contention regarding the propriety of ever awarding unemployment insurance benefits to a worker who has been suspended without pay following disciplinary proceedings brought pursuant to Education Law § 3020-a.

Lahtinen, J.P., McCarthy and Lynch, JJ., concur. Ordered that the decision is reversed, without costs, and matter remitted to the Unemployment Insurance Appeal Board for further proceedings not inconsistent with this Court's decision.